# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-794V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| MARY SAVILLE, | * | Chief Special Master Corcoran |
| | * | |
| Petitioner, | * | |
| | * | Dated: March 26, 2024 |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | * | |

*Renee J. Gentry*, Vaccine Injury Clinic, George Washington University Law School, Washington, DC, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

### DAMAGES DECISION[1]

On January 25, 2021, Mary Saville filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleges she suffered cellulitis following receipt of the quadrivalent influenza and pneumococcal vaccines on November 5, 2018. Petition (ECF No. 1) at 3. Based on the record and the parties' written submissions, I ruled for Petitioner on entitlement. *See* Ruling on Entitlement, dated Aug. 28, 2023 (ECF No. 39) (the "Entitlement Ruling").

The parties have now briefed their damages positions. *See* Petitioner's Motion, dated Jan. 17, 2024 (ECF No. 46) ("Mot."); Respondent's Opposition, dated Feb. 15, 2024 (ECF No. 47) ("Opp."); Petitioner's Reply, dated Feb. 26, 2024 (ECF No. 48) ("Reply"). Petitioner requests

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

$92,000.00 for actual pain and suffering, plus $804.80 in unreimbursed past medical expenses, $2,754.80 to $2,994.80 for future/anticipated out of pocket expenses, and $14.85 in travel expenses. Respondent, by contrast, proposes $50,000.00 in pain and suffering, $804.80 in past out-of-pocket medical expenses, no future care costs, and $4.97 in travel expenses.

My resolution of these disputed damages components is set forth below.

## I.  Factual Background

A more complete summary of the relevant medical history and factual background is contained in the entitlement decision. *See generally* Entitlement Ruling at 2–5. I incorporate that history herein. In short, Petitioner has been found to have suffered cellulitis due to receipt of two covered vaccines in late 2018. The record showed treatment of Petitioner's condition in the immediate post-vaccination months, although the injury had mostly resolved not long after the six-month severity "deadline" for Program claims. *Id.* at 15. She also alleged a variety of sequelae from the vaccines, but I specifically noted in my ruling that they had not at all been shown to be associated—and thus would not be relevant in calculating damages. *Id.* at 15–16.

## II.  Procedural History

This case was initiated in January 2021, and was eventually reassigned to me after being presided over for a period of time by a different special master. ECF No. 17. The parties then began engaging in settlement discussions but were unable to reach an agreement. ECF No. 30. Respondent filed his Rule 4(c) Report on May 16, 2022. ECF No. 31. Petitioner subsequently filed Dr. DeWitt's report. ECF No. 33. Respondent then filed an amended Rule 4(c) Report on January 18, 2023, stating that he would not continue to defend the case during further proceedings on entitlement, and requested a Ruling on the Record instead. ECF No. 36. After I ruled for Petitioner, the parties briefed damages for my final determination.

## III.  Relevant Law on Damages Determinations

### A.  *General Considerations*

A petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(A)(i)–(iii). Petitioners bear the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22–23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

As noted above, this provision of the Act permits recovery of costs *to be incurred* for future care as well, although such costs must be shown to be "reasonably necessary." Section 15(a)(1)(A)(iii)(I)–(II). The meaning of the phrase "reasonably necessary" is somewhat imprecise, as I have recognized in other cases. *Barone v. Sec'y of Health & Hum. Servs.*, No. 11-707V, 2016 WL 3577540 (Fed. CL. Spec. Mstr. May 12, 2016). But it encompasses the idea that additional care aimed at maximizing an injured party's overall well-being (no matter how personally deserving the individual may be) is *not* in keeping with the scope of damages envisioned by the Program. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448135, at *6 (Fed. Cl. Spec. Mstr. Apr. 19, 2013) (defining "reasonably necessary" to mean "that which is required to meet the basic needs of the injured person . . . but short of that which may be required to optimize the injured person's quality of life"); *see also Bedell v. Sec'y of Health & Hum. Servs.*, No. 90-765V, 1992 WL 266285 (Cl. Ct. Spec. Mstr. Sept. 18, 1992) (defining the term to mean more than merely barely adequate, but less than the most optimal imaginable). And it goes almost without saying that such costs must *also* pertain to care associated with the alleged injury or its sequalae. Medical care a petitioner might receive, even if needed, that is not aimed at treatment of the vaccine injury at issue, or related to it, is not a reasonably necessary future care component.

B.   *Pain and Suffering*

The Act caps pain and suffering awards at $250,000.00. Section 15(a)(4). There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (*quoting McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g., Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). In so doing, I may rely on my own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

3

## ANALYSIS

I.  **Pain and Suffering**

Petitioner requests $92,000.00 in actual pain and suffering, emphasizing both that her initial reaction was severe, that she continued thereafter to feel some residual pain at the situs of injury, and that the adverse event she had experienced left her reluctant to receive vaccines in the future, despite their medical advisability. Mot. at 4–7. To support these contentions, Petitioner references both the medical records and her own witness statements. *See* Petitioner's Witness Statement, filed Ex. 9 (ECF No. 7-12); Second Witness Statement, filed as Ex. 16 (ECF No. 22-8).

Petitioner further notes that in comparable cases involving cellulitis as the injury, claimants have received between $84,000.00 and up to $145,000.00—meaning her demand falls reasonably within that range. Mot. at 7. She also references several comparable cases—although many (if not all) are not reasoned decisions, and therefore provide little guidance as to what might constitute a fair pain and suffering award for this kind of injury. *See, e.g.*, *Baker v. Sec'y of Health & Hum. Servs.*, 19-0289V, 2022 WL 17819550 (Fed. Cl. Spec. Mstr. Nov. 7, 2022) (awarding more than $130,000.00 in pain and suffering on Respondent's proffer); *Agard v. Sec'y of Health & Hum. Servs.*, No. 19-0185V, 2021 WL 1912384 (Fed. Cl. Spec. Mstr. Apr. 7, 2021) (awarding on stipulation a lump sum of $95,000.00, but without any statement of what portion constituted the pain and suffering award); *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-546V, 2016 WL 8222020 (Fed. Cl. Spec. Mstr. Oct. 7, 2016) (decision on proffer awarding more than $125,000.00. but without specifying what amount therein constituted compensation for pain and suffering); *Miller v. Sec'y of Health & Hum. Servs.*, No. 16-0595V, 2017 WL 6044322 (Fed. Cl. Spec. Mstr. Apr. 10, 2017) (awarding approximately $99,000.00 based on parties' stipulation).

Respondent counters that a more modest sum—$50,000.00—is appropriate. Opp. at 9. He disputes the value of Petitioner's various witness statements, observing that they are unsworn, conclusory, or do no more than confirm the initial injury, while failing to demonstrate its lingering impact. *Id.* at 7–8, 10. He further emphasizes that Petitioner has relied on stipulations or proffered cases for her comparables (as noted above), as opposed to reasoned decisions that explain why a particular award was appropriate. *Id.* at 10. However, Respondent then *also* relies on settled proffer values (which have the same deficiencies as comparable case guideposts) to defend his proposed pain and suffering amount. *Id.* at 10 n.4.

Nevertheless, Respondent does cite some reasoned decisions—and the amounts awarded therein are significantly less than even what Respondent proposes. *See, e.g.*, *Skinner-Smith v. Sec'y of Health & Hum. Servs.*, No. 14-1212V, 2023 WL 3043904 (Fed. Cl. Spec. Mstr. Apr. 21, 2023) (awarding $10,125.00 for past pain and suffering due to cellulitis, plus $6,000.00 for future pain and suffering); *Yost v. Sec'y of Health & Hum. Servs.*, No. 18-288V, 2022 WL 4593029 (Fed. Cl. Spec. Mstr. Aug. 29, 2022) ($10,000.00 in pain and suffering for an abscess and scarring at vaccination situs); *Amorella-Moore v. Sec'y of Health & Hum. Servs.*, No. 91-1558V, 1992 WL

4

182194 (Fed. Cl. Spec. Mstr. July 13, 1992) ($500 in pain and suffering, given lack of evidence of ongoing impact from abscess injury). Under the facts of this case, Respondent reasons, a $50,000.00 award would be more than fair. Opp. at 13–14.

In her reply, Petitioner does not endeavor to address the three reasoned cases referenced by Respondent. Rather, she maintains that proffers and stipulations have evidentiary value in assessing the proper amount for a pain and suffering award. Reply at 1–2. And she maintains that the facts show a more severe occurrence of cellulitis than in Respondent's comparables, with ongoing sequelae lasting three years. *Id.* at 2–3.

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of her injury. In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I also considered prior awards for pain and suffering from comparable cases, although I ultimately base my determination on the circumstances of *this* case.

Overall, I deem Petitioner's injury to have been a moderate case of cellulitis—severe initially, but which was successfully treated and mostly resolved not long after presentation. Petitioner has persuasively shown some ongoing pain (albeit which was not severe enough to compel her to seek much additional treatment). But Respondent's reasoned decision comparable cases were also quite relevant—and they show that cellulitis cases do not generally present the kinds of circumstances in which significant pain and suffering awards are justified. In so finding, I repeat my oft-noted observation that no matter how much the *parties* may rely on prior proffers or stipulated sums as guidelines for settlement, they are *not* useful precedent in deciding a disputed case. *Hayes v. Sec'y of Health & Hum. Servs.*, No. 17-804V, 2021 WL 688628, at *2 (Fed. Cl. Spec. Mstr. Jan. 6, 2021). Parties settle cases on their own for any number of reasons having nothing to do with a claim's underlying merits, and thus the fact that a type of case often settles in the Program for a particular sum is not evidence that all such claims are "worth" the same.

Given the record, Respondent has offered an exceedingly generous amount in pain and suffering that exceeds what special masters have awarded in comparable cases involving cellulitis or some parallel skin-related vaccine injury. Petitioner, by contrast, has not defended the proposed higher sum with any reasoned comparable decisions of her own. Accordingly, I will adopt Respondent's figure of $50,000.00. And I note that in future such cases, where reasoned decisions suggest an amount *lower* than what a party has proposed to be defensible, there is a strong risk I will embrace the lower figure as best justified by the law.

## II.  Unreimbursed Medical Expenses and Costs – Past and Future

Petitioner asks for several different components of damages reflecting medical costs. First, she calculates $804.80 in unreimbursed out-of-pocket expenses based on eight treater visits in the fall of 2018. Mot. at 10. Second, she demands $14.85 in travel expenses attributable to driving to

these treater visits. *Id.* at 11. (On reply, Petitioner admitted that some of these costs were incurred by her family in visiting her at the hospital. Reply at 5). Finally, she estimates the need for future care—physical therapy to aid her in rehabilitation of the area on her arm where she experienced cellulitis—projecting a need for two to three one-hour sessions over a six to eight-week period, and hence asking for some amount in the range of $1,950.00 to $2,190.00. Mot. at 10–11.

Respondent concedes the past unreimbursed medical expense sum is acceptable, but denies the propriety of a future expense award. Opp. at 15, 16. He deems these costs to be speculative in nature, and not demonstrated to be medically necessary either, since it does not appear either that physical therapy was recommended by a treater (except in the context of litigating this claim), or that Petitioner had ever obtained it in the past five-plus years since the vaccine injury at issue. *Id.* Respondent also only accepts $4.97 in travel costs, based on his determination that Petitioner made only one single automobile trip to the hospital in November 2018. *Id.* at 16.

On reply, Petitioner defends the future care request. She maintains that she has continued to suffer residual pain and related sequelae in the years since her primary treatment for cellulitis. Reply at 2. While she may not have consistently sought treatment for it in that period, pain still remained. *Id.* at 3. She also emphasizes the impact of the Pandemic in 2020 as affecting her ability to treat her ongoing issues (especially since she has an immunocompromised son). *Id.* She stresses that the best future care that she can even obtain is physical therapy-oriented (but this is not covered by insurance). *Id.* at 3–4. And she disputes the concept that a treater projection of future needed care is suspect simply because it is rendered at the damages stage of the case. *Id.* at 4.

Because the parties agree on the past amount of unreimbursed expenses to be awarded, I only need decide the future sum and the mileage expense. Regarding the former, Petitioner has established *some* need for additional care of her vaccination situs due to the cellulitis she experienced. I agree with Respondent that the number requested has a speculative nature (evidenced by, if nothing else, the range Petitioner offers rather than an exact figure), and that the treatment gaps (while somewhat explained by Petitioner) lend support to the conclusion that Petitioner's ongoing sequelae are quite limited. However, because the evidence otherwise supports Petitioner's claim that she continues to experience some residual pain, and because it does appear that the requested physical therapy will not be insurance-reimbursed, I will allow a smaller sum—$1,000.00—for this future care cost. The lower award does take into account the somewhat larger pain and suffering figure, which I deem quite generous under the circumstances, and which could be applied toward additional physical therapy care if it proves necessary.

Otherwise, I will grant the lesser amount of $4.97 in travel care-associated costs, as proposed by Respondent. Petitioner has not shown she incurred all of these travel costs in multiple trips to a treater. Visits from family members during the time she was hospitalized, while wholly understandable, do not constitute a reasonably-reimbursed expense.

## CONCLUSION

Based on the record as a whole and arguments of the parties, I award Petitioner a lump sum payment of **$51,809.77** (representing $50,000.00 for Petitioner's past pain and suffering, $804.80 for past unreimbursable medical expenses, $1,000.00 in future care costs, and $4.97 in travel costs) in the form of a check payable to Petitioner Mary Saville. This amount represents compensation for all damages that would be available under Section 15(a).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Decision.[3]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.